**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**DESIREE AILEEN WALL,**

      **Plaintiff,**

v.                                                Case No.  8:11-cv-1214-T-30TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

      The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and remanded for further consideration.

I.

      Plaintiff was thirty-eight years old at the time of her administrative hearing.  She stands 5' tall and weighed 105 pounds according to her administrative filings.  Plaintiff has a high school education.  Her past work was as a telemarketer, cashier, winder/assembler, pre-K teacher assistant, food server, and runner for an auto parts store.  Plaintiff applied for disability benefits and Supplemental Security Income payments in May 2007, alleging

disability as of November 1, 2003,[1] by reason of extreme back problems. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge ("ALJ") on November 9, 2009. The Plaintiff was represented at the hearing by counsel and testified in her own behalf. In essence, Plaintiff claims she is no longer able to work because she suffers pain from her head to her toes. She testified that she gets "massive" migraines on a daily basis. When the migraines are severe, she is bedridden with the lights out. Medications offer a little relief but affect her concentration and vision. Plaintiff also suffers from burning pain in her neck and shoulder area. The pain radiates into her arms and hands. She also suffers from occasional low back pain. Occasionally her legs and knees give out and she falls. By her account, her wrists hurt on a daily basis as well. Regarding her pain in general, Plaintiff testified it increases during the day until it is nearly unbearable, and it is an all day, everyday, event. She takes Percocet and Soma and has neck, back, and wrist braces that she uses frequently. She also uses a heating pad and takes showers for some slight relief. Plaintiff also described passing out on occasion for no apparent reason. It is like she suffers seizures and she is presently having the matter checked out.

Regarding her work, Plaintiff testified that she was forced to leave her last job as a winder and assembler because of the pain in her neck, the headaches, and because she could not concentrate to perform the job. Thereafter, she attempted to do work at a convenience store but left after a short time.

---

[1] At her administrative hearing, the onset date was amended to January 1, 2006.

2

As for her physical abilities and daily activities, Plaintiff testified that standing and walking is very painful. She can walk about one block before she has to sit down, and she can stand for fifteen to twenty minutes but then must sit or lie down. She has problems using her hands to do things like gripping bottles, doorknobs, and brushing her hair. Because of the problems with her legs being numb and with her knee, she has difficulty climbing stairs. She has problems with personal care such as dressing, doing her hair, and putting on her shoes. She relies on her children or her boyfriend for most of the household chores. While she may try to help with cooking, she has difficulty cutting certain items and lifting heavy pots. She indicated she does not have any good days, but some are better than others. On days when she gets out of bed at all she still must lie down six to eight times during the day. Plaintiff testified that the she sleeps fitfully. She takes her medication as soon as she wakes up so that she can function. According to Plaintiff, she has no stamina and is not nearly the person she used to be. (R. 31-51).

Next, the ALJ took testimony from Nancy Hayward, a vocational expert ("VE"). The VE initially classified Plaintiff's various past jobs as ranging from sedentary, semi-skilled work all the way to heavy, semi-skilled work. On a hypothetical assuming a person of Plaintiff's age, education, and work experience, limited to sedentary unskilled work and limitations for sitting no more than thirty minutes at a time or for a total of four hours in an eight-hour day, standing in combination for no more than fifteen minutes at a time and for no more than two hours in an eight-hour day, and for a total ability to sit, stand, and walk for no more than six hours in an eight-hour day, such individual could not do Plaintiff's past work or

3

any other work. Additionally, if such individual were absent more than three times a month due to pain, no jobs would be available. (R. 51-53).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of December 8, 2009, the ALJ determined that while Plaintiff has severe impairments related to lumbar and cervical degenerative disc disease and migraine headaches, she nonetheless had the residual functional capacity to perform a full range of sedentary exertional work. Upon this finding and through application of the medical - vocational Guidelines, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 12-19). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

To prevail on a claim for Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

Here, the ALJ decided the Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R.

§§ 404.1501, *et seq*. These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." *Id.* at Part 404, Subpart P, Appendix 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. *Id.* at § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. *Id.* at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. She seeks an order reversing the decision and remanding the case because:

(1) The ALJ erred in failing to make a proper credibility finding as to the Claimant's testimony, and erred in improperly discounting the Claimant's complaints of pain and subjective symptoms; and

(2) The ALJ erred in determining the Claimant's RFC.

(Doc. 16).

On her first claim, Plaintiff initially urges that the ALJ failed to properly analyze her subjective testimony and gave nothing but "boilerplate" reasons for discounting such testimony. Here, the ALJ credited Plaintiff with impairments which reasonably could cause her pain but then failed to consider the intensity, persistence and limiting effects of the same. By Plaintiff's argument, her scoliosis, degenerative disc disease, disc herniations, spinal stenosis, straightening of the spine, and abnormal range of motion fully support her claims of disabling pain and symptoms. She further criticizes the ALJ's conclusion that her limited daily activities cannot be attributed to her medical condition. Lastly, Plaintiff complains that the ALJ should have taken testimony from Plaintiff's witness, Michael Jackson, who was standing by at the hearing. (Doc. 16 at 3-6).

In response, the Commissioner urges that the ALJ articulated adequate reasons for discounting Plaintiff's credibility. Thus, the ALJ cited findings by Drs. Rutherford and Swain, as well as Dr. Sanchez's review of September 2009 MRIs, as unsupportive of Plaintiff's claims of disabling pain. While Plaintiff cites to certain diagnoses, the Commissioner notes that she offers no support for disabling limitations and such is not established by mere diagnosis of a condition. As for the Plaintiff's claim of highly limited daily activities, the Commissioner points out that the ALJ observed it was unclear that such was attributable to her medical condition. He notes further that, as suggested by Dr. Rutherford, Plaintiff appeared to overstate her limitations and the ALJ properly found that her claims were outweighed by the other evidence of record. As for not calling Mr. Jackson, the Commissioner responds that neither Plaintiff nor counsel asked to call the witness, even when asked if they had anything else. (Doc. 17 at 10-14).

7

On her second claim, the Plaintiff argues that the ALJ erred in assessing her residual functional capacity ("RFC") because he failed to include in it all limitations she alleged. In particular, she notes that while the ALJ found (R. 17) that she ". . . may have occasional pain and reduced concentration due to medication," he failed to incorporate her difficulty concentrating in the RFC and did not include it in his questioning of the VE. Further, in light of this nonexertional limitation, the ALJ erred in relying on the grids for decision. (Doc. 16 at 6-8).

The Commissioner counters that Plaintiff fails to identify any specific limitations not properly considered by the ALJ. He also urges that the medical record supports the ALJ's assessment. Specifically, the Commissioner notes that Plaintiff's alleged mention of difficulties with concentration due to medication is unsupported by any medical evidence that undermines the ALJ's RFC assessment. (Doc. 17 at 4-10).

After review of the decision in light of the whole of the medical record, I find that the ALJ's decision to discount Plaintiff's subjective complaints to the extent that she claimed such disabled her from any work is supported by substantial evidence. Contrary to Plaintiff's urging, the decision reflects a fair consideration of her pain complaints and a rational for discounting the same that goes beyond mere boilerplate statements. However, as for the ALJ's assessment of Plaintiff's RFC, I conclude that a remand for clarification is required.

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the

alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th cir. 1987).

Proper application of the regulatory standard will satisfy this circuit's pain standard. *See Wilson v. Barnhart,* 284 F.3d 1219, 1226 (11th Cir. 2002). Under the regulations, where, as here, the ALJ determines from the medical evidence that a claimant has impairments that could reasonably be expected to produce the symptoms alleged, he must then consider the whole of the record and evaluate the intensity and persistence of the symptoms to determine how such limits the capacity for work. 20 C.F.R. §§ 404.1529(c), 416.929(c).

As the decision here reveals, the ALJ identified the applicable regulatory standard (R. 15-16) and applied the same in reaching his conclusion on Plaintiff's credibility (R. 16-17).[2] While the ALJ did employ the more general language cited by the Plaintiff, that was not

---

[2]As the ALJ summarized Plaintiff's complaints:

> she is unable to work since January 1, 2006 primarily due to neck and back pain as well as headaches and migraines. She testified that she has migraines every other day; pain and spasms in her neck, shoulders and back; left knee buckling;

9

the end of his discussion. As detailed below, the decision reflects a rationale for the credibility conclusions founded upon the ALJ's consideration of the medical evidence. Thus, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In reaching this conclusion as to the claimant's residual functional capacity, the undersigned finds the claimant credible to the extent that her lumbar pain would prohibit her from working a job which required lifting or carrying of more than ten pounds or a good deal of walking and standing. Therefore, the undersigned has restricted the claimant's residual functional capacity to a full range of sedentary work. However, the objective clinical and laboratory diagnostic findings reported by her treating and examining medical sources do not substantially corroborate

---

> constant wrist pain; and has passed out for no reason at least three times in the last year. The claimant also testified that her pain begins in the morning and gets progressively worse throughout the day even when she takes medication. The claimant further testified that her activities of daily living are very limited, and her children or friend help her with the household chores, although she indicated she is able to walk for a block, stand for up to twenty minutes, climb stairs and ambulate without an assistive device. As the complaints regarding her functional limitations are subjective, the undersigned has assessed the claimant's credibility within the provisions of 20 CFR 416.929 as well as Social Security Ruling 96-7p.

(R. 16).

> the severity of her subjective complaints (Exhibits 6F and 13F).
>
> The undersigned finds that the objective medical record is fully consistent with the above residual functional capacity and inconsistent with disabling levels of pain or physical disability. During a consultative examination on August 4, 2007, the claimant alleged disability due to back and neck problems and an unspecified joint problem. Andrew Rutherford, M.D. reviewed the claimant's medical records to date and after a review of systems and physical examination, concluded that the only detectable neurological or motor function dysfunction on examination was a sensory deficit in the left lower extremity that is not consistent with dermatomal nerve distribution, making it suspect. Dr. Rutherford opined that the claimant appeared to intentionally amplify the findings, and although she reported a history of scoliosis, he also noted there was no significant scoliosis detectable on examination which, if present since childhood as reported, would be expected to be externally visible. Dr. Rutherford also indicated that there was no effusion in the joints; no crepitus; and further opined that the condition appeared to be nondebilitating (Exhibit 6F page 4).

(R.16).

> The undersigned also finds that the claimant's more recent medical records support the conclusions reached by Dr. Rutherford. A multiplanar, multi-sequence magnetic resonance imaging (MRI) through the claimant's lumbar spine interpreted by Maria Sanchez, M.D. revealed the lower spinal cord and conus appear normal with no intradural masses or abnormalities; alignment of the osseous structures and bone marrow is normal with no focal abnormal bone marrow signal to suggest infiltration; no significant disc bulge or focal herniation of the lower thoracic spine; no significant disc bulge or focal herniation at Ll-2, L2-3, L3-4 and only mild bulge with no significant canal stenosis at L4-5 and LS-Sl. In addition, the MRI revealed no paraspinal soft tissue masses or abnormalities or abnormalities in the sacral canal. Based upon the above, Dr. Sanchez concluded that the claimant has degenerative disc disease from C3-C4 through C5-C6 resulting in mild canal stenosis; and

> moderate left neural foraminal stenosis at C5-C6 with possible anatomic impingement of the exiting nerve root with no acute osseous abnormality (Exhibits 11F and 12F pages 2-3).
>
> As indicated above, Dr. Swain concluded that the claimant has lumbar and cervical disc bulge, radiculopathy and spondylosis; however, the claimant's reported symptoms to Dr. Swain were much less severe than indicated during her testimony at the hearing. During the examination on October 1, 2009, the claimant's chief complaint was low back pain with no mention of neck, shoulder, leg or knee pain, and no mention of headaches (Exhibit 13F). Contrary to her testimony, the claimant reported that her pain was a six of ten and pain control with her current treatment of Percocet was good (Exhibit 13F page 2). Although the claimant reported during the examination that her pain was aggravated by bending, she denied a tendency to fall or neurological problems, and Dr. Swain noted that her gait was normal and there were no abnormalities with her upper or lower extremities or neurological function (Exhibit 13F). The undersigned finds that if the claimant's migraine headaches and other alleged impairments were indeed so painful as to be disabling, she would have reported them to her treating medical professionals.
>
> Although the claimant has described daily activities which are fairly limited, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, including her children and friend's handling of daily chores. Overall, the undersigned finds that the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.
>
> Based upon the evidence of record and the claimant's testimony, the undersigned finds that she may have occasional pain and reduced concentration due to medication; however, the claimant has retained the residual functional capacity to perform sedentary work activity with the above mentioned restrictions. Any testimony or allegations otherwise are not credible.

(R. 17).

Beyond boilerplate conclusions, the decision reflects a thoughtful consideration of the medical evidence and a conclusion that such did not support the claim for disabling limitations. The ALJ's consideration extended to both the clinical and objective evidence and to Plaintiff's self-reports to these medical providers, which was inconsistent with her claims made at the hearing. My review of this record indicates that the statements by the ALJ are supported by, and consistent with, that record. Plaintiff fails to demonstrate otherwise with any specificity. As urged by the Commissioner, that Plaintiff was diagnosed with a number of conditions does not end the inquiry. "[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Finally, while the record reveals that Plaintiff's friend was present and could have testified at the hearing, no request was made that he be allowed to do so. *See* (R. 51, 54). Thus, the ALJ recognized the witness's presence before proceeding with the VE. Then, prior to the closing of the hearing, counsel made no effort to call the witness. In the circumstances, the lack of testimony from this witness does not appear the fault of the ALJ.

In sum, on this appeal, Plaintiff fails to demonstrate from the record any error in the ALJ's analysis of her subjective complaints. And, as noted above, an ALJ may discount the subjective testimony of a claimant by articulating adequate bases to do so. Here, he has done so.

The more difficult issue is the ALJ's handling of Plaintiff's RFC. Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining

13

ability to do work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Here, Plaintiff complains that the ALJ failed to incorporate limitations in his RFC assessment which otherwise were noted by the ALJ.[3] Apart from the ALJ's comment on occasional pain and reduced concentration due to medication, Plaintiff does not here specify any particular limitations which should have been a part of the RFC assessment. Assuming that the argument is directed at those subjective limitations referenced in the decision, as I have addressed above, the ALJ determined that such were overstated. And, given that Plaintiff does not demonstrate any error in this conclusion, the ALJ was not obliged to consider those limitations in his RFC assessment not supported by the record.

As for the ALJ's statement that Plaintiff may suffer occasional pain and reduced concentration due to medication, Plaintiff argues that such limitation should have been considered in connection with her RFC assessment and should have prevented the ALJ's exclusive reliance on the grids for decision. Because Plaintiff's read on this is arguably correct, I am obliged to agree. As set out above, this finding of occasional pain and reduced

---

[3]Plaintiff references generally the ALJ's summary of her subjective testimony in the decision (R. 16), set forth in n. 2 above, and his statement that Plaintiff would suffer occasional pain and reduced concentration due to medication.

14

concentration due to medication was made by the ALJ in summing up his conclusion that Plaintiff's subjective testimony was overstated. (R. 17). While it arguably was not intended to speak to Plaintiff's RFC assessment, it is confusing because it appears to qualify the RFC for a full range of sedentary work. If so, then Plaintiff is correct and the limitation required further explication. And, at a minimum, the finding of a significant nonexertional limitation in concentration would dictate that the ALJ seek vocational expert testimony rather than rely exclusively on the grids for decision.

Nonexertional limitations are those limitations or restrictions imposed by an impairment which affect one's ability to meet the demands of a job other than the strength demands. *See* 20 C.F.R. §§ 404.1569a(c); 416.929a(c). As Plaintiff urges, pain as well as a restriction in concentration are nonexertional limitations. *See id.* Case law in this Circuit dictates that exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities. *See Foote*, 67 F.3d at 1559. Such is arguably the case here. The Eleventh Circuit has recognized that nonexertional limitations can cause the grids to be inapplicable <u>only</u> when they are severe enough to prevent a wide range of gainful employment at a given exertional level. *See Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Thus, the ALJ is obliged to make a specific finding as to whether or not any nonexertional limitations preclude a wide range of employment at the given exertional level. *Id.* Where such determination is made, it is reviewed only to determine whether it is supported by substantial evidence. Here, the ALJ made no such finding regarding any nonexertional limitation in concentration.

In sum, the ALJ's apparent conclusion that Plaintiff would suffer an occasional reduction in concentration by reason of her pain and/or her medications should have been addressed, and the failure to do so renders it impossible to ascertain whether the ALJ applied the correct legal standards and whether substantial evidence supports the decision. Consequently, I recommend that the decision be reversed and the case remanded for clarification by the ALJ concerning this apparent nonexertional limitation. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987) (If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation. I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

> Respectfully submitted this
> 9th day of June 2012.
>
> _/s/ Thomas B. McCoun III_
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies to:
United States District Judge
Counsel of Record